IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI-DADE COUNTY, a political
subdivision of the State of Florida,          :
                          Plaintiff,          :
vs.                                           : CASE NO:   10-20881-CIV-
                                              : ALTONAGA/Brown
JOHNSON CONTROLS, INC., a foreign
corporation,                                  :
                          Defendant.
_____/             :

# JOHNSON CONTROLS' MEMORANDUM IN SUPPORT OF ITS
# MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

UNDISPUTED MATERIAL FACTS ......................................................................1

STANDARD OF REVIEW .....................................................................................2

ARGUMENT ..........................................................................................................3

I.    THE COUNTY CANNOT RECOVER FOR ANY ALLEGED
      BREACH BY JCI BECAUSE IT BREACHED THE CONTRACT
      FIRST...........................................................................................................4

      A.    The Rule Precluding Recovery by a Breaching Party is
            Applicable in All Types of Contract Disputes............................4

      B.    The County Breached the Contract by Failing to Provide
            JCI the Minimum Amount of Maintenance Hours
            Guaranteed by the Contract. ......................................................6

      C.    The County's Failure to Adhere to the Maintenance
            Schedule Materially Interfered with JCI's Performance of
            its Maintenance Obligations and Was Another Breach by
            the County...................................................................................9

      D.    The County's Misrepresentations and Failure to Disclose
            Critical Information During the Bid Process and Beyond
            was Yet Another Breach Precluding JCI's Liability..................11

II.   JCI's FAILURE TO PURCHASE OR FUND A BRAND NEW
      APM SYSTEM WAS NOT A BREACH  OF CONTRACT. ...............15

III.  THE COUNTY LACKS THE REQUISITE EVIDENCE OF
      RECOVERABLE DAMAGES........................................................17

CONCLUSION.....................................................................................................19

# TABLE OF CONTENTS

**Page**

## CASES

Allen v. Bd. of Pub. Educ.,
495 F.3d 1306 (11th Cir. 2007) ........................................................ 2

Allied Van Lines, Inc. v. McKnab,
331 So. 2d 319 (Fla. 2nd Dist. Ct. App. 1976) ................................ 18

Allstates Van Lines Corp. v. Lebenstein,
303 So. 2d 33 (Fla. 3d Dist. Ct. App. 1974) .................................... 18

Baker v. Bennett M. Lifter, Inc.,
370 So. 2d 41 (Fla. 3d Dist. Ct. App. 1979) .................................... 10

Beans v. Chohonis,
740 So. 2d 65 (Fla. 3d Dist. Ct. App. 1999) .................................... 16

Bridge Capital Investors, II v. Susquehanna Radio Corp.,
458 F.3d 1212 (11th Cir. 2006) ........................................................ 3

Bryan and Sons Corp. v. Klefstad,
237 So. 2d 236 (Fla. 4th Dist. Ct. App. 1970) .............................. 4, 6

Carpenter Contractors of Am., Inc. v. Fastener Corp. of Am.,
611 So. 2d 564 (Fla. 4th Dist. Ct. App. 1992) ................................ 17

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......................................................................... 3

Champagne-Webber, Inc. v. City of Fort Lauderdale,
519 So. 2d 696 (Fla. 4th Dist. Ct. App. 1988) ................................ 12

Chatlos v. Morse Auto Rentals, Inc.,
183 So. 2d 854 (Fla. 3d Dist. Ct. App. 1966) .................................. 6

Cheezum Dev. Corp. v. Intracoastal Sales & Serv.,
336 So. 2d 1210 (Fla. 2nd Dist. Ct. App. 1976) .............................. 6

City of Homestead v. Johnson,
760 So. 2d 80 (Fla. 2000) ................................................................ 16

Cox v. CSX Intermodal, Inc.,
732 So. 2d 1092 (Fla. 1st Dist. Ct. App. 1999) ................................ 4

Crawford v. Carroll,
529 F.3d 961 (11th Cir. 2008) .......................................................... 2

Etheredge v. Barkley,
25 Fla. 814, 6 So. 861 (1889) ................................................... 3, 4, 5

Exterminating Co., Inc. v. DelGuidice,
790 So. 2d 1158 (Fla. 5th Dist. Ct. App. 2001) .............................. 18

Florida Hay and Land Developers, Inc. v. McDill Columbus Corp.,
    539 So. 2d 570 (Fla. 1st Dist. Ct. App. 1989) ................................................ 4, 5

Gendzier v. Bielecki,
    97 So. 2d 604 (Fla. 1957) ................................................................................ 16

Grossman Holdings Ltd. v. Hourihan,
    414 So. 2d 1037 (Fla. 1982) ........................................................................... 18

Gulf American Land Corp. v. Wain, 166 So. 2d 763 (Fla. 3d Dist. Ct. App. 1964) ...... 3, 9, 10, 11

Gulf Cities Gas Corp. v. Tangelo Park Serv. Co.
    253 So. 2d 744 (Fla. 4th Dist. Ct. App. 1971) ............................................... 16

Gulf Group Holdings, Inc. v. Coast Asset Mgmt. Corp.,
    516 F. Supp. 2d 1253 (S.D. Fla. 2007) ........................................................... 19

Hamilton Const. Co. v. Board of Public Instruction of Dade County,
    65 So. 2d 7291 (Fla. 1953) ............................................................................. 16

Hanna v. Martin,
    49 So. 2d 585 (Fla. 1950) ............................................................................... 17

Heine v. Parent Constr., Inc., 4 So. 3d 790
    (Fla. 4th Dist. Ct. App. 2009) ........................................................................ 18

In re Elec. Mach. Enter., Inc.,
    416 B.R. 801 (Bankr. M.D. Fla. 2009) .......................................................... 10

Jacksonville Port Auth. v. Parkhill-Goodloe, Inc., 362 S. 2d 1009
    (Fla. 1st Dist. Ct. App. 1978) .................................................................... 12, 13

Jeffery v. Sarasota White Sox, Inc.,
    64 F.3d 590 (11th Cir. 1995) ........................................................................... 2

Lambert v. Berkley South Condo. Ass'n, Inc.,
    680 So. 2d 588 (Fla. 4th Dist. Ct. App. 1996) ............................................... 16

Marshall Constr., Ltd. v. Coastal Sheet Metal & Roofing, Inc.,
    569 So. 2d 845 (Fla. 1st Dist. Ct. App. 1990) .............................................. 4, 5

McDonald Air Conditioning, Inc. v. John Brown, Inc.,
    285 So. 2d 697 (Fla. 4th Dist. Ct. App. 1973) ............................................... 18

MCI Worldcom Network Servs., Inc. v. Mastec, Inc.
    995 So. 2d 221 (Fla. 2008) ............................................................................. 17

Mee Indus. v. Dow Chem. Co.
    608 F.3d 1202 (11th Cir. 2010) ...................................................................... 18

Mnemonics, Inc. v. Max Davis Assoc., Inc.,
    808 So. 2d 1278 (Fla. 5th Dist. Ct. App. 2002) ............................................. 17

Norin Mortgage Corp. v. Wasco, Inc.,
    343 So. 2d 940 (Fla. 2nd Dist. Ct. App. 1977) ............................................. 4, 5

Peacock Constr. Co. v. Modern Air Conditioning, Inc.,
    353 So. 2d 840 (Fla. 1977) .................................................................................... 3

PL Lake Worth Corp v. 99Cent Stuff – Palm Springs, LLC,
    949 So. 2d 1199 (Fla. 4th Dist. Ct. App. 2007) .................................................... 6

Ramada Dev. Co. v. Rauch,
    644 F.2d 1097 (5th Cir. Unit B May 1981) ......................................................... 10

Rollins, Inc. v. Butland,
    951 So. 2d 860 (Fla. 2nd Dist. Ct. App. 2006) ..................................................... 3

Ryan v. Atlantic Fertilizer & Chem. Co.,
    515 So. 2d 324 (Fla. 3d Dist. Ct. App. 1987) ..................................................... 18

Santa Rosa Golf Assoc., Inc. v. Haraway,
    998 So. 2d 1166 (Fla. 1st Dist. Ct. App. 2008) .................................................. 18

Sharp v. Williams,
    141 Fla. 1, 192 So. 476, 480 (1939) .......................................................... 9, 10, 11

Town of Longboat Key v. Carl E. Widell and Son,
    362 So. 2d 719 (Fla. 2nd Dist. Ct. App. 1978) ................................................... 12

Troup v. Heacock,
    367 So. 2d 691 (Fla. 1st Dist. Ct. App. 1979) .................................................. 4, 5

U.S. v. Frazier,
    387 F.3d 1244 (11th Cir. 2004) ........................................................................... 18

United States v. Atlantic Dredging Co.,
    253 U.S. 1 (1920) ................................................................................................. 13

Vantage View, Inc. v. QBE Ins. Corp.,
    No. 07-61038-CIV-MARRA, U.S. Dist. LEXIS 20938 (S.D. Fla. Mar. 3. 2009) ..................... 4

Walker v. Chancey,
    96 Fla. 82, 117 So. 705 (1928) .............................................................................. 4

Waters v. Key Colony East,
    345 So. 2d 367 (Fla. 3d Dist. Ct. App. 1977) ....................................................... 4

## OUT OF STATE CASES

Fed. R. Civ. P. 56(c) ....................................................................................................... 2

## STATE CASES

11 Fl. Jur. Contracts § 257 (2011) ............................................................................... 9

11 Fl. Jur. Contracts § 259 (2011) ............................................................................... 9

1-33 Fla. Forms of Jury Instruction § 33.40 ............................................................... 9

1-33 Fla. Forms of Jury Instruction § 33.41 .......................................................... 3, 9

1-34 Florida Forms of Jury Instruction § 34.06 ........................................................ 19

2-42 Fla. Forms of Jury Instruction § 42.42 .................................................................. 9

2-42 Fla. Forms of Jury Instruction § 42.43 .................................................................. 12

Restatement (First) of Contracts § 315 (1932) ............................................................. 9

Defendant, Johnson Controls, Inc. ("JCI"), submits this Memorandum of Law in support of its Motion for Summary Judgment.

## INTRODUCTION

This breach of contract case arises out of an accident that occurred on November 28, 2008 at the Miami International Airport E- Sat ellite Terminal when the south train of the Automated People Mover ("APM") system overran its stop and hit the terminal wall. Miami Dade County ("the County") owned the APM and the Miami-Dade Aviation Department ("MDAD") was responsible for its operation. (JCI's Separate Statement of Material Facts in Support of its Motion for Summary Judgment ("SOF") ¶ 3.) JCI was the contracted maintenance provider. (*Id.* ¶ 4.)

The County has sued JCI for breach of contract. Specifically, the County alleges that JCI breached the contract by: (1) causing the crash through improper maintenance, and (2) failing to purchase the County a new train. (Compl. ¶ 25, attached as Group Ex. A to JCI Notice of Removal, Dkt. 1.) Questions of fact exist on these issues. Nonetheless, summary judgment is appropriate in favor of JCI because there are no questions of fact concerning plaintiff's prior breach of the parties' contract and summary judgment is proper as a matter of law.

## UNDISPUTED MATERIAL FACTS

The evidence definitively establishes that the County was the party that first breached the contract, and thus cannot recover against JCI under its breach of contract claims. Furthermore, there is no evidence that the acts or omissions of JCI alleged by the County in its Complaint constitute a breach of any term of the parties' agreement and no evidence of the County's purported loss. Specifically, the undisputed evidence shows:[1]

* The contract required the County to give JCI a minimum of twelve hours per day of maintenance time. (SOF ¶ 42.)

* The County provided JCI with roughly only half of the amount of maintenance hours specified by the contract. (*Id.* ¶¶ 65-67.)

* Despite assurances from the County that it would increase maintenance hours to adhere

---

[1] A full recitation of the undisputed material facts, each supported with record citation and exhibit, is contained in JCI's Statement of Material Facts filed separately pursuant to Local Rule 7.5, which JCI incorporates as though fully set forth herein.

to the contract, the County never did so.  (*Id.* ¶¶ 68-71.)

\*     The accident was caused by the sudden failure of the program stop module, an outdated electronic component of the APM system designed and manufactured by a third party years before, for which JCI had no contractual responsibility.  (*Id.* ¶¶ 2, 8-9, 19-20, 43-45.)

\*     Though the County had information from the APM system manufacturer and previous maintenance contractor that the program stop module was in dire need of redesign and replacement, posed a safety concern, and could experience a catastrophic failure at any moment, it failed to disclose these facts and other pertinent information concerning the condition of the APM to JCI during the bidding process and after, despite requests for such information from JCI.  (*Id.* ¶¶ 17-23, 27-36, 43-45, 47-48, 53-63.)

\*     In response to JCI's questions during the bid process, MDAD also provided JCI with false information concerning the levels of staffing and amount of man hours needed to keep the APM safe and operational.  (*Id.* ¶¶ 48-52.)

\*     At the time of the accident, the south train was nearly 30 years old and the APM system had exceeded its design life.  The County has depreciated the system to zero.  The system required decommissioning, and could not be replaced in kind.  (*Id.* ¶¶ 9-11, 19.)

\*     Even though the County was planning to acquire a new APM system prior to the accident, and was aware the contract did not obligate JCI under any circumstances to purchase a new train, it demanded JCI replace the entire system or pay it $60 plus million to avoid termination.  (*Id.* ¶¶ 14-15, 73-75.)

The application of basic Florida contract principles to these facts precludes the recovery sought by the County in this case.  Accordingly, summary judgment in JCI's favor is warranted.

## STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008) (citing Fed. R. Civ. P. 56(c)). In these cases, the moving party "bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007) (citations omitted).  After the moving party satisfies this burden, the non-movant "must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317,

324 (1986)).

Questions of law are appropriately resolved on summary judgment. *Bridge Capital Investors, II v. Susquehanna Radio Corp.,* 458 F.3d 1212, 1216 (11th Cir. 2006). Breach of contract cases are particularly well suited for disposition on summary judgment, as the interpretation of the contract is a question of law. *Peacock Constr. Co. v. Modern Air Conditioning, Inc.,* 353 So. 2d 840, 842 (Fla. 1977). In such cases, it is the court that determines whether certain matters alleged by a party would, if true, constitute a breach. *Gulf American Land Corp. v. Wain,* 166 So. 2d 763, 764 (Fla. 3d Dist. Ct. App. 1964). The jury's role is limited to deciding whether the matters actually occurred. *Id.*; Comment, 1-33 Fla. Forms of Jury Instruction § 33.41.

## ARGUMENT

The County's breach of contract claim against JCI fails as a matter of law. To sustain its claim, the County must prove: (1) the existence of a contract, (2) a breach of the contract, (3) damages resulting from the breach and (4) performance of its obligations under the contract or a legal excuse for its nonperformance. *Rollins, Inc. v. Butland,* 951 So. 2d 860, 876 (Fla. 2nd Dist. Ct. App. 2006). Keeping in mind the last element, it is the County's burden to establish by preponderance of the evidence that it has performed all of its contractual obligations and has not itself breached the contract. *Id.*; *Etheredge v. Barkley,* 25 Fla. 814, 818-819, 6 So. 861, 862-63 (1889).

In this case, the County's case falls short on three of the four elements. First and foremost, the County is unable to establish that it performed all of its contractual obligations as set forth in the parties' written agreement and implied in law. Indeed, the evidence is conclusive that the County first breached the contract in failing to provide JCI the minimum mandatory maintenance hours required to accomplish its preventative maintenance duties. This first breach by the County is a total bar to its claim of any subsequent breach by JCI.

Second, the County has no evidence that any of the alleged acts or omissions by JCI constituted a contractual breach. Though it claims that JCI breached by failing to purchase the County a brand new APM system following the accident, the plain language of the contract and other evidence of the parties' intent make clear that JCI's replacement of the APM system was never even contemplated by the parties, let alone a term of their agreement.

Third, the County cannot meet its burden in establishing the existence and value of a

- 3 -

compensable loss it suffered attributable to the alleged breach.  Specifically, the County has failed to come forth with any evidence whatsoever of the value of the south train immediately before or after the accident.

## I.     THE COUNTY CANNOT RECOVER FOR ANY ALLEGED BREACH BY JCI BECAUSE IT BREACHED THE CONTRACT FIRST.

Florida law is clear. A party that first breaches a contract may not recover for a subsequent breach by the other party. *Etheredge*, 25 Fla. at 818-819, 6 So. at 862-63; *Florida Hay and Land Developers, Inc. v. McDill Columbus Corp.*, 539 So. 2d 570, 571 (Fla. 1st Dist. Ct. App. 1989); *Troup v. Heacock*, 367 So. 2d 691, 692 (Fla. 1st Dist. Ct. App. 1979); *Norin Mortgage Corp. v. Wasco, Inc.*, 343 So. 2d 940, 943 (Fla. 2nd Dist. Ct. App. 1977); *Bryan and Sons Corp. v. Klefstad*, 237 So. 2d 236, 238-39 (Fla. 4th Dist. Ct. App. 1970).  Non-performance by the plaintiff is a complete bar to a breach of contract suit. *Etheredge*, 25 Fla. at 818-819, 6 So. at 862-63.

This straightforward rule is a natural extension of the plaintiff's obligation to establish all of the elements of a breach of contract action, including its own performance, and is a corollary to the legal duty of parties to a contract to cooperate with one another and perform fairly and in good faith. *Marshall Constr., Ltd. v. Coastal Sheet Metal & Roofing, Inc.*, 569 So. 2d 845, 848 (Fla. 1st Dist. Ct. App. 1990); *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097-98 (Fla. 1st Dist. Ct. App. 1999).  It has its roots in the settled and sound policy that a party may not take advantage of its own wrongdoing under a contract to avoid responsibility or profit thereunder. *Walker v. Chancey*, 96 Fla. 82, 87-88, 117 So. 705, 707-08 (1928); *Waters v. Key Colony East*, 345 So. 2d 367, 367 (Fla. 3d Dist. Ct. App. 1977); *Vantage View, Inc. v. QBE Ins. Corp.*, No. 07-61038-CIV-MARRA, U.S. Dist. LEXIS 20938, *8-9 (S.D. Fla. Mar. 3. 2009).

### A.     The Rule Precluding Recovery by a Breaching Party is Applicable in All Types of Contract Disputes.

The first breach defense has been consistently utilized by Florida courts in a wide variety of contractual contexts to bar recovery by a breaching party.  The Supreme Court of Florida first set forth the rule in *Etheredge v. Barkley*, 25 Fla. at 818-819, 6 So. at  862-63.  There, the plaintiff lender sued the defendant debtor for breach of the parties' settlement agreement following a foreclosure action. *Id.* at 815-16, 6 So. 2d at 861-62.  The agreement provided the debtor with additional time to pay the amount ordered by the Court in exchange for his

- 4 -

agreement to pay an increased rate of interest.  The lender sued the debtor for breach when he failed to make his payment.  *Id.*  In defense, the defendant came forth with evidence that the plaintiff lender had first breached the agreement by demanding additional sums from the defendant in order to honor the extension.  *Id.* at 819, 6 So. 2d at 863.  The trial court dismissed the plaintiff's suit.  The Florida Supreme Court affirmed, stating: "Where the parties enter into an agreement, and one of the parties violates it, as a rule the other party is thereby released from the agreement." *Id.*

The first breach defense was again applied to dispose of a breach of contract counterclaim in *Norin Mortgage Corp. v. Wasco, Inc.*, 343 So. 2d at 943.  In that case, the plaintiff contractor sued the lender and landowner when they failed to pay the contractor for the work performed.  *Id.* at 941.  While the contractor was successful, the defendants were able to achieve an offset on damages based on their counterclaim that the contractor had not performed additional work required of it under the contract.  *Id.* at 942-43.   The appellate court affirmed the judgment in favor of the contractor, but reversed as to damages.  The court found the offset was in error where the landowner "first breached its contract by failing to pay [the contractor] the balance owed for its construction work."  *Id.* at 943.  The court reasoned that because the breaching landowner could not force the contractor to perform any corrective work following its own breach, it was not entitled to recover anything for the contractor's subsequent breach in failing to perform that work.  *Id.*

In *Troup v. Heacock*, a plaintiff's breach was again cited as a bar to its recovery, this time in the context of an employment dispute.  367 So. 2d at 692.  In *Troup*, the plaintiff employer sued to enforce the non-compete provision of an employment contract following the termination of the defendant employee.  *Id.*  The employee defended on the grounds that the employer had breached first by unilaterally reducing his salary.  *Id.*  The appellate court agreed that the employer's initial breach resulted in a release of the defendant employee's contractual obligations.  To hold any other way, the court opined, "would result in inverse peonage." *Id.*

Time and time again, Florida courts, applying the principles articulated in *Etheredge*, *Troup* and *Norin*, have denied recovery to a party if it breached first.  *See, e.g.*, *Marshall Constr.*, 569 So. 2d at 848 (reversing award in plaintiff subcontractor's favor for breach of contract against general contractor where subcontractor could not "establish performance on its part of the contractual obligations imposed in the contract"); *Florida Hay and Land*, 539 So. 2d at 571

(holding that a lender's failure to release land pursuant to the parties' agreement "[was] not actually a breach of contract" because the debtor had breached first); *Bryan and Sons*, 237 So. 2d at 238-39 (excusing defendant contractor's breach on account of plaintiff owner's earlier breach which "would alone have justified the corporate defendant's termination of the work"); *Chatlos v. Morse Auto Rentals, Inc.*, 183 So. 2d 854, 1855 (Fla. 3d Dist. Ct. App. 1966) (finding plaintiff operator, having first breached the contract by missing its final payment, "not in a position to successfully maintain an action for breach of contract" against hotel owner for the subsequent closure of the hotel). In fact, the rule is so faithfully adhered to by Florida courts, they fail to stray from it even in cases where, unlike this one, the subsequent breach by the defendant was willful. *See, e.g., Cheezum Dev. Corp. v. Intracoastal Sales & Serv.*, 336 So. 2d 1210, 1211-12 (Fla. 2nd Dist. Ct. App. 1976) (reversing judgment in favor of plaintiff where trial court overlooked the fact that the defendant's admittedly willful breach "occurred after the breach found by the court to have been committed by [plaintiff]"). And though the defense was first relied on by the Florida Supreme Court over one hundred years ago, there is no doubt it remains viable today. *See, e.g., PL Lake Worth Corp v. 99Cent Stuff – Palm Springs, LLC*, 949 So. 2d 1199 (Fla. 4th Dist. Ct. App. 2007) (plaintiff lessor's action for declaratory judgment denied in light of evidence that plaintiff initially breached the implied duty of good faith and fair dealing).

In line with the cases above, the County here cannot recover as a matter of law where the evidence is conclusive that it breached the contract multiple times and in numerous ways before any purported breach by JCI occurred. Specifically, the County: 1) breached an express term of the contract in failing to provide JCI nearly half of the requisite hours allotted for its maintenance tasks, 2) breached both the agreement and the implied duty of good faith and fair dealing by consistently depriving JCI of the minimum maintenance time thus hindering JCI's ability to perform its contractual maintenance duties, and 3) breached its duty to not mislead bidders, including JCI, and to disclose material information pertaining to the condition of the APM equipment and feasibility of the maintenance project. Any one of these breaches is sufficient to bar the County's recovery here.

**B.    The County Breached the Contract by Failing to Provide JCI the Minimum Amount of Maintenance Hours Guaranteed by the Contract.**

There is no dispute the County failed to provide JCI with the requisite number of maintenance hours identified in the contract. This initial breach precludes its recovery in this

case.  Pursuant to the contract, JCI agreed to provide preventative maintenance services for the APM system  (SOF ¶¶ 4, 40.).  Preventative maintenance on each train was to be performed while the train was taken out of operation, which could only be accomplished by the County. (*Id.* ¶¶ 3, 66.)   The County specified a total of 12 hours during each day when it would release the trains from operation in order to allow JCI to perform its maintenance duties. (*Id.* ¶ 42.)  So long as JCI maintenance work on the train occurred during the specified hours, it would not be penalized for the non-operational status of the train.  (*Id.*)  Section 3.17(E) of the technical Specification in the contract provided:

> The Contractor *shall be permitted* to have one train Out of Service for maintenance each night from 8:00 p.m. through 6:00 a.m., and each morning from 8:00 a.m. through 10:00 a.m..  No damage will be assessed for reduced service during the scheduled maintenance period so long as the domestic and international passengers continue to receive regular service on at least one track.

(ITB No. MDAD-01-07[2] ("the Contract"), attached as Ex. L to SOF, at TP-12 § 3.17.) (emphasis added).

After assuming its duties as the maintenance contractor, JCI learned that the County would not honor its contractual commitment to give JCI 12 hours of maintenance time daily. (SOF ¶¶ 65-67.)  In fact, the County, citing pressure from American Airlines, only allotted JCI roughly half of the amount of hours guaranteed by the contract.  (*Id.* ¶¶ 67-71.)   JCI repeatedly asked the County to either comply with the minimum hours or provide more funds to procure additional labor.  (*Id.* 68, 71.)  Though the County discussed the issue with JCI many times and agreed to try to find a solution, it never did so.  (*Id.*)

The County concedes, as it must, that it was the first to breach the Contract.  The County's point man, Daniel McFadden, assisted the County with issues pertaining to the APM even before JCI came on board and candidly acknowledged the County's failure to adhere to the contractual maintenance guidelines in his sworn testimony:

Q:   The County promised, in this provision [TP-13 § 3.17], to provide specific

---

[2] The Contract is comprised of multiple sections, each which bear their own pagination.  For example, the General Conditions of the Contract contain pages prefaced with "GC."  The Technical Specifications section contains page numbers that begin with "TP."  The Table of Contents at the beginning of the Contract identifies each of the major sections.  A copy of the entire contract is attached as Ex. L to the SOF.

hours for maintenance; didn't they?

A:   Yes

Q:   That was part of the Contract; right?

A:   Yes.

Q:   Both parties agreed that Johnson Controls would be entitled to have maintenance from 8:00 P.M. to 6:00 A.M. each morning and each morning from 8:00 A.M. to 10:00 A.M.; correct?

A:   Yes.

Q:   Did the County honor that promise?

A:   No.

(10/26/10 Hearing Testimony of Dan McFadden, attached as Ex. A to SOF, at 73:16-74:2.)

Carlos Jose, MDAD's Director of Terminal Maintenance, similarly conceded the breach, cavalierly explaining the County's deliberate decision to withhold the agreed-to maintenance hours from Johnson Controls:

Q:   What was the reason for the inability to get the, obtain the contracted number of hours for operations and maintenance?

A:   Sometimes American Airlines will have a delayed flight that needs to come into the gate…

***

Q:   JCI, in trying to find a way to address the issue of not being able to get their contracted hours, they threw out some options.  Did you ever review these options with anyone from Johnson Controls?

A:   I discussed them with Craig Collerette.

Q:   At Johnson Controls?

A:   Yes.

Q:   And ultimately where any of these options accepted by Miami-Dade Aviation Department?

A:   No.

***

Q:   And why did you reject that request?

A:   It was discussed between Max Fajardo and myself, and it was not going to be approved because they bidded on the contract to maintain the train and we decided that now they couldn't do it, so we said, no, continue maintaining the trains they way you're doing it.

(1/25/10 Deposition Testimony of Carlos Jose, attached as Ex. D to SOF, at 175:10-14, 176:4-

14, 178:6-12.)

In this case, the County stands in the same position as the plaintiffs in *Etheredge, Troup,* *Norin,* and the other countless cases barring recovery by breaching parties. The County expressly agreed to provide JCI with twelve hours each day for maintenance work. It breached by failing to honor this contractual commitment. Having initially breached an important part of the contract, the County is precluded from recovering damages from JCI for any alleged subsequent breach through allegedly improper maintenance. *See* 1-33 Fla. Forms of Jury Instruction § 33.40 (if defendant establishes "that Plaintiff breached an important part of the contract … Defendant was excused from performance").

**C.     The County's Failure to Adhere to the Maintenance Schedule Materially Interfered with JCI's Performance of its Maintenance Obligations and Was Another Breach by the County.**

Not only was the County's failure to provide JCI the minimum guaranteed amount of time to perform its maintenance duties a breach of an express provision of the contract, it also was a breach of the County's implied obligation not to hinder or interfere with Johnson Control's performance under the contract and a breach of the implied obligation of good faith and fair dealing. It is well settled that "[w]hen two parties enter into a contract, it is assumed that neither party will do anything to hinder the performance of the other." 1-33 Fla. Forms of Jury Instruction § 33.41. *See also* 2-42 Fla. Forms of Jury Instruction § 42.42 (a party that fails "to do everything that the contract assumed [it] would do to accomplish the purpose of the contract" is liable for breach of contract). "[I]ndeed if the situation is such that the cooperation of one party is an essential prerequisite to performance by the other, there is not only a condition implied in fact qualifying the promise of the latter, but also an implied promise by the former to give the necessary cooperation." *Sharp v. Williams,* 141 Fla. 1, 9, 192 So. 476, 480 (1939).[3] Thus, a party's interference with or obstruction of the other side's performance under the contract is "considered to be a breach of the contract, although not specified and delineated in the written instrument." *Gulf American Land Corp.,* 166 So. 2d at 764. *Accord Baker v. Bennett M. Lifter,*

---

[3] *See also* Restatement (First) of Contracts § 315 (1932) ("Prevention or hindrance by a party to a contract of any occurrence or performance requisite under the contract…is a breach of contract"); 11 Fl. Jur. Contracts § 257 (2011) ("prevention of performance is a breach of contract"); 11 Fl. Jur. Contracts § 259 (2011) ("A party who prevents performance cannot take advantage of his own wrong.").

*Inc.*, 370 So. 2d 41, 42 (Fla. 3d Dist. Ct. App. 1979) (to prevail on summary judgment, the defendant must show that it did not breach the parties' agreement "by interfering with the plaintiff's ability to perform."); *Ramada Dev. Co. v. Rauch,* 644 F.2d 1097, 1101-02 (5th Cir. Unit B May 1981) (applying Florida law) (a party that hinders the performance of another is "charged under the law with responsibility for it"). Such conduct is also considered a breach of the implied duty of good faith and fair dealing. *See In re Elec. Mach. Enter., Inc.*, 416 B.R. 801, 881-82 (Bankr. M.D. Fla. 2009) (manager's modification of project schedule, though permitted by the contract, breached the obligation of good faith and fair dealing where it hindered and obstructed subcontractor's performance).

In *Sharp v. Williams,* the Florida Supreme Court cited hindrance of performance to find in favor of a plaintiff in a breach of contract suit who was damaged by the actions of the defendant but who could not point to any express provision of the contract that had been breached. *Sharp,* 141 Fla. at 9-10, 192 So. at 480. The contract gave the plaintiff the right to operate the defendant owner's slots on premises leased by the owner. When the owner failed to renew the lease for the premises, the operator had no place to operate the slots and thus was unable to perform under the agreement. *Id.* at 2-3, 192 So. at 477-78. Even though the contract executed by the parties did not contain any provision obligating the owner to renew the lease, the Court found that in making the agreement, the owner had impliedly promised to cooperate with the operator. His refusal to renew the lease interfered with the operator's performance and was a breach of this implied promise. The Court had no problem characterizing the owner's conduct as a breach of contract. *Id.* at 9-10, 192 So. at 480.

Breach of an implied promise to cooperate was again upheld as a legitimate basis for a breach of contract action in *Gulf American Land Corp. v. Wain*, 166 So. 2d at 764. In that case, the plaintiff real estate agent entered into a written agreement with the defendant broker obligating him to sell exclusively for the defendant for a period of one year. Both parties were given an absolute right to terminate the agreement for any reason upon written notice. *Id.* at 763. The agent sued the broker for breach following his early termination. Unable to point to his termination as a breach given the language of the agreement, the agent instead argued the broker "failed, neglected, and refused to furnish him information which would permit him to discharge his duties under the contract." *Id.* at 764. The broker relied on the absence of any term in the agreement obligating him to provide such information. But the contract's silence in this regard

- 10 -

was unpersuasive to the court, who upheld a jury verdict against the broker, and found the broker "within the rule that when a person contracts for the doing of a certain thing with another, he impliedly promises that he will not himself do anything to hinder or obstruct the performance by the other person." *Id.* Interference with the agent's performance was a breach of the contract. *Id.*

In this case, by failing to remove the trains from service for 12 hours each day, and providing only half the agreed maintenance hours, the County interfered with JCI's ability to perform its maintenance work and discharge its duties under the contract. Its actions are analogous to those of the owner-lessor in *Sharp* and the employer-broker in *Gulf American Land Corp.* In fact, the County's behavior in this regard presents an even more compelling case of breach than in either of those cases, because it constitutes a breach of an express term of the contract, a breach of its implied promise to cooperate with JCI in accomplishing the preventative maintenance schedule, and a breach of its implied duty to perform the contract fairly and in good faith. Having further breached the agreement and its duties in this additional manner, the County has no legal basis to complain of JCI's later alleged breach.

**D.**     <u>**The County's Misrepresentations and Failure to Disclose Critical Information During the Bid Process and Beyond was Yet Another Breach Precluding JCI's Liability.**</u>

The County's failure to adhere to the maintenance schedule set forth in the contract was not the only breaching conduct on the part of the County that predated the alleged breach by JCI. Indeed, the County violated its duties and JCI's contractual rights before the contract was even awarded. In August 2008, following unsuccessful negotiations with the incumbent contractor for renewal, the County placed the subject contract for the maintenance of the APM system out for bid. (SOF ¶¶ 24-39.) Prior to that time, the County had been on notice that the APM system had significantly exceeded its design life, was in a rapid state of deterioration, had obsolete components subject to catastrophic failure at any time, posed a safety concern to the traveling public, and required additional maintenance time and manpower just to keep the system operational. (*Id.* ¶¶ 10-11, 18-21, 27-36.) None of this information was disclosed to JCI during the bid process. (*Id.* ¶¶ 43-63.) In fact, much of it remained concealed until this litigation. (*Id.* ¶ 62.) This breached the County's duty to provide all bidders, including JCI, with material information within its knowledge pertinent to the cost and feasibility of the contract work, and to not provide information which would convey a false impression or mislead bidders. *Jacksonville*

- 11 -

*Port Auth. v. Parkhill-Goodloe, Inc.*, 362 S. 2d 1009 (Fla. 1st Dist. Ct. App. 1978). *See also Town of Longboat Key v. Carl E. Widell and Son*, 362 So. 2d 719, 721-22 (Fla. 2nd Dist. Ct. App. 1978) (town liable for misleading information of site conditions provided to the contractor during the bid process); *Champagne-Webber, Inc. v. City of Fort Lauderdale*, 519 So. 2d 696, 698 (Fla. 4th Dist. Ct. App. 1988) (city has "an implied obligation to furnish information which would not mislead prospective bidders"); 2-42 Fla. Forms of Jury Instruction § 42.43 (government entity commits breach of the publicly bid contract by failing to disclose or actively concealed material facts from Plaintiff).

*Jacksonville Port Authority v. Parkhill-Goodloe, Inc.* is instructive. In that case, the port authority publicly bid a dredging contract that was awarded to the plaintiff contractor. The bid materials provided by the government advised bidders to conduct a site examination and to study all drawings and specifications carefully prior to submission of a bid. *Jacksonville Port Auth.*, 362 S. 2d at 1011. The bid documents further cautioned that "no allowances will be made for conditions overlooked by the Contractor." *Id.* The government also provided bidders boring information and drawings, but warned such items were "not guaranteed to be more than a general indication" of the materials likely to be encountered at the site. *Id.* None of the information or materials provided by the agency indicated the possible presence of heavy rock at the site. Though the agency was on notice of this possibility due to a past experience with another contractor dredging in an adjacent area, it failed to share this fact with bidders. *Id.* at 1010-11.

After the plaintiff contractor reviewed the bid and contract materials, visited the site and conducted some less sophisticated boring tests, it submitted the low bid and was awarded the dredging contract. *Id.* Upon commencing the work, the contractor encountered heavy rock in the area, which damaged its equipment and made the execution of the contract work far more expensive than originally assumed. *Id.* When the government denied its claim for the additional work performed and extra costs encountered, the contractor brought suit for breach of contract, breach of warranty, and fraudulent misrepresentation. *Id.* at 1010. The trial court found in favor of the contractor, stating:

> [T]he Plaintiff relied on the boring reports furnished by the Defendant and had a right to do so … Further, the Defendant was on notice of rock in the area because of the prior claim from a prior contractor dredging in an adjacent area and the Defendant did not disclose the possibility of rock to the bidders, including Plaintiff, on the contract. The Court finds that Defendant had a duty to make known to the bidders on this project its full knowledge of the possibility of rock in this area.

*Id.*

In affirming the judgment of the trial court, the appellate court recognized a government entity's duty in bidding a public contract to deal fairly with its bidders and not mislead them during the bid process to induce lower bids. *Id.* at 1009 (citing *United States v. Atlantic Dredging Co.*, 253 U.S. 1 (1920)[4], the court explicitly rejected the agency's arguments that under the express language of the bid documents and contract, it was the responsibility of the bidder to satisfy itself as to the nature of materials to be encountered during dredging, and that bidder assumed the risk of unexpected conditions. *Id.* at 1011-12. In the court's view, the exculpatory nature of such provisions did not vitiate the government's duty to disclose conditions known to it and not readily discoverable by the contractor that would materially impact the contractor's bid and the performance of the work. *Id.* at 1013. Bidders, the Court held, should have the right to rely on information given to them by the government, and the right to assume the information is both accurate and complete. *Id.*

This case is on all fours with *Jacksonville Port Authority*. Like the port authority there, the County misrepresented the condition of the APM by failing to disclose relevant and material information known only to it and the incumbent contractor and not known or easily obtainable by JCI. *Jacksonville Port Authority* and its progeny characterizes this type of non-disclosure as a breach of the implied duty of good faith and fair dealing and a breach of contract, even if the bid materials contained a disclaimers or other exculpatory provision.

In actuality, the County's conduct in this case was far more egregious than that at issue in *Jacksonville Port Authority*. Here, not only did the County fail to provide material information, it made *affirmative misrepresentations* in response to specific questions asked by JCI. For instance, following a written inquiry from JCI regarding the staffing organization and shift structure of the incumbent maintenance provider, the County asserted in writing via a bid addendum that there were currently three technicians staffed per shift. (SOF ¶¶ 49-50; *see also* Contract Addendum #1 dated 8/28/07, attached as Ex. M to SOF.) In truth, the County was well

---

[4] In *Atlantic Dredging Co.*, the U.S. Supreme Court found in favor of a contractor for costs incurred in a public dredging contract due to land conditions different than represented by the government, despite various disclaimers as to the accuracy and reliability of information provided. 253 U.S. at 9-12. Notably, the government was not accused of knowingly misrepresenting the condition or withholding material information from the bidders. *Id.*

aware that the incumbent contractor employed twelve technicians total, and that six technicians were required to work during the third shift in order to perform all scheduled work during the reduced maintenance window. (SOF ¶ 51.) The County also failed to disclose its agreement to pay the incumbent contractor extra money to account for the additional manpower required to accomplish three daily inspections to monitor the deterioration of the APM. (*Id.* ¶ 52; *see also* Miami Dade County Resolution No. 14(a)(20) dated 6/24/07, attached as Ex. K to SOF.)

To add insult to injury, the County never provided JCI with the records from which JCI could discover such information, despite *specific requests by JCI* for the materials during the bid phase and after. (SOF ¶¶ 53-63; *see also* Contract Addendum #2 dated 8/29/07, attached as Ex. N to SOF.)   Some of the items requested by JCI and not supplied by the County included: previous maintenance contracts, maintenance and repair records, reports on the condition of the equipment, maintenance and operating procedures, and copies of third party system inspections. (SOF ¶¶ 58.) Much of these records remained concealed until the discovery phase of the instant lawsuit. (*Id.* ¶ 62.)

Of the most notable of the items withheld: the previous contracts with, and reports and correspondence from, the APM manufacturer and incumbent maintenance provider. (*Id.* ¶¶ 62-63.) In some way or another, each of the these items emphasized the degraded condition of the system, raised safety and liability concerns, and/or warned of the potential for catastrophic failures of the APM's obsolete electronic components, including the program stop module, the precise component which all parties concede failed on the day of the accident. (*Id.* ¶¶ 18-20, 27-36; *see also* Bombardier Inspection Report dated 5/9/06 (Ex. E to SOF), and Bombardier Correspondence to MDAD dated 4/11/07 (Ex. F to SOF), 4/16/07 (Ex. G to SOF), 4/27/07 (Ex. I to SOF), and 4/30/07 (Ex. J to SOF).)   If the port authority's failure to disclose its past experience with another contractor pertaining to the condition of a site adjacent to the land covered by the contract constituted a breach, the County's false representations and non-disclosure of the deteriorated condition of the equipment that is the actual subject of the contract surely qualifies.   That the source of the County's knowledge was its prior dealings with the incumbent contractor and JCI's fellow bidder makes the situation all the more galling.

In sum, the evidence adduced to date establishes, beyond question, that the County breached the contract and its implied duties and obligations to JCI multiple times and in a variety of ways.   Since all of the breaches occurred before any purported breach by JCI, the County is

not entitled to any recovery in this case, and summary judgment in JCI's favor is appropriate.

## II.   JCI'S FAILURE TO PURCHASE OR FUND A BRAND NEW APM SYSTEM WAS NOT A BREACH OF CONTRACT.

Aside from the County's breaches, this Court has yet another basis to grant JCI's motion: there is no evidence that JCI breached the contract. The County contends that JCI breached the Contract by causing the accident and failing to replace the south train. (Compl. ¶ 25, Dkt. 1; SOF ¶¶ 73-75.) Though its Complaint fails to identify any specific section of the contract, the County presumably is relying on sections 4.3.03 and 11.3.01, which address the contractor's responsibility for and protection of the "Work." Both sections contain similar language. Section 11.3.01 provides:

> Until the Final Acceptance of the Work, excepting only those portions of the Work previously accepted, the Contractor shall have the charge and care thereof and shall take every precaution against injury or damage to any part due to the action of the elements or from any other cause, whether arising from the execution or from the non-execution of the Work. The Contractor shall rebuild, repair, restore and make good all injuries or damages to any portion of the Work occasioned by any of the above causes before Final Acceptance and shall bear the expense thereof.

(Contract at GC-61 § 11.3, attached as Ex. L to SOF.)[5]

Under no circumstances did either section obligate JCI to purchase the County a brand new state-of-the art APM system. Section 11.3.01 unambiguously limits any repair or replacement obligations of JCI to "the Work." "Work" is defined in Section 1.1.54 of the contract as:

> The construction and services required by the Contract Documents, which includes all labor, materials, equipment and services to be provided by the Contractor to fulfill the Contractor's duties and obligations imposed by the Contract Documents.

Notably, the contract definition of "Work" does not include the APM system or any component thereof. Indeed, the APM system is separately referred to in the contract as the "STS" and is defined as the Automatic People Mover System "connecting between Concourse E and Satellite E at Miami International Airport." (Contract at TP-1 § 3.1; *see also id.* at A-1 ¶ 1

---

[5] Section 4.2.03 also includes the following language: "The Contractor shall rebuild, repair, restore, and make good at its own expense all loss or damage to any portion of the work …"

and BF-3 ¶ 1.A.)  Unlike other provisions in the agreement, neither Section 4.2.03 nor Section 11.3.01 contain any reference to the "STS."

When the terms of a written agreement are clear and unambiguous, the Court must give these terms their defined meaning and enforce such terms as a matter of law.  *Hamilton Const. Co. v. Board of Public Instruction of Dade County*, 65 So. 2d 729, 731 (Fla. 1953); *Beans v. Chohonis*, 740 So. 2d 65, 67 (Fla. 3d Dist. Ct. App. 1999).  "If the documents, within their four corners, are facially clear, a court must give full force to the plain and clear language of the governing documents" without resort to extrinsic evidence.  *Lambert v. Berkley South Condo. Ass'n, Inc.*, 680 So. 2d 588, 590 -591 (Fla. 4th Dist. Ct. App. 1996).  Contract provisions must be strictly construed to avoid reading into them a duty that the parties did not intend to be assumed. In this vein, a court "should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted."  *Gulf Cities Gas Corp. v. Tangelo Park Serv. Co.* 253 So. 2d 744, 748 (Fla. 4th Dist. Ct. App. 1971) (citing *Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957)).  Moreover, any ambiguities found are strictly construed against the drafter of the contract.  *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000).

In this case, the contract language, which the County itself drafted, is unambiguous.  JCI only assumed responsibility, in limited instances, to repair or replace defective "Work."  It did not agree to assume responsibility for the repair or replacement of the antiquated APM system. Had the parties intended JCI to bear this duty, they would have used the word "STS" in the clause as opposed to "Work", as they had in at least 12 other sections of the contract.  (*See* Contract at A-1 ¶ 2, BF-3 ¶ 1.A, BF-3 ¶ 1.B; TP-1 §§ 3.1-3.2, TP-3 § 3.5, TP-6 § 3.7, TP-9 § 3.14, TP-12 § 3.17, and TP-50, 52, and 57.)

Even the County's representative, Mr. McFadden, who assisted in drafting and reviewing the Contract, admitted he could find no ambiguities anywhere within its text:

> Q:   And in reviewing the contract, you found it to be clear and unambiguous; correct?
>
> A:   Yes.
>
> Q:   You didn't find any problems; you thought this was very clear or there was an  ambiguity here that I think really needs to be explained?
>
> A:   I didn't find any, no.

(D. McFadden Tr. at 64:13-19.)

Because the language of the contract is clear, the Court need not look outside the four

- 16 -

corners of the agreement in addressing JCI's motion for summary judgment. Because JCI did not agree to repair or replace the APM System in any circumstances, its failure to do so following the accident was not a breach of contract. But even if the Court were to look beyond the applicable contract language in an effort to ascertain the parties' true intent, the result would be the same. The parties' intent concerning the potential replacement of the system is simply not in dispute.

As but one example is the insurance carried by the parties, which demonstrates neither party intended JCI to be the insurer of the APM equipment. The County only required JCI to carry commercial liability insurance for personal injury and property damage in the amount of $1.0 million (*See* Contract at GC-65 through GC-66 § 12.3.01.) Had the parties contemplated that JCI could potentially be on the hook for replacing the thirty year-old APM System with a new system, currently estimated by the County to cost $50-60 million, the contract would have required coverage by JCI far in excess of $1.0 million. The County's own $25 million policy of insurance covering the APM System (and its subsequent property damage claim to the insurer for the loss) only further drives home this point. (See Ex. P to SOF.)

## III.   THE COUNTY LACKS THE REQUISITE EVIDENCE OF RECOVERABLE DAMAGES.

The County's suit is also subject to dismissal due to the lack of evidence on the issue of recoverable damages. *See Carpenter Contractors of Am., Inc. v. Fastener Corp. of Am.*, 611 So. 2d 564, 565 (Fla. 4th Dist. Ct. App. 1992) (to recover for breach of contract, the plaintiff must prove by preponderance of the evidence "damages flowing from the breach"). Without any credible claim that JCI was contractually obligated to repair or replace the APM System with brand new technology, the County, at most, would only be entitled to recover damages for the value of the equipment it actually lost – part of one train of an aged two-train APM system on its last leg and already slated for replacement. *See MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So. 2d 221, 223-24 (Fla. 2008) (an entity injured by a breach of contract or negligence is entitled only to fair and just compensation "precisely commensurate with the injury sustained" - not a windfall) (quoting *Hanna v. Martin*, 49 So. 2d 585, 587 (Fla. 1950)); *Mnemonics, Inc. v. Max Davis Assoc., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th Dist. Ct. App. 2002) (a damage award for breach of contract "is intended to place the injured party in the position he or she would have been in had the breach not occurred"); *Santa Rosa Golf Assoc., Inc. v. Haraway*, 998 So. 2d

1166, 1167 (Fla. 1st Dist. Ct. App. 2008) (where the breach causes injury or loss of property, an award should consist of the lesser of the lost value of the property, or the costs of repairing or restoring the property); *Orkin Exterminating Co., Inc. v. DelGuidice*, 790 So. 2d 1158, 1159-60 (Fla. 5th Dist. Ct. App. 2001) (if repair costs exceed the value of the property or are otherwise impracticable, "the law *requires* that damages be measured by the diminution in value" in order to prevent economic waste and avoid overcompensation to plaintiff) (emphasis added). Yet the County has no evidence to establish the value of the train at the time of the loss. *See Ryan v. Atlantic Fertilizer & Chem. Co.*, 515 So. 2d 324, 326-27 (Fla. 3d Dist. Ct. App. 1987) (damage award for destroyed property is market value at the time of the loss).[6]

The valuation of complex equipment and components, particularly in cases where the items are obsolete and no in-kind replacement is available, is beyond the ken of the average juror, thus necessitating expert testimony on the issue. *U.S. v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004)(en banc). *See also Mee Indus. v. Dow Chem. Co.* 608 F.3d 1202, 1222 (11th Cir. 2010) (complex financial calculations require expert testimony). The County has designated no expert in this case to offer any opinion of the value of the south train on November 28, 2008.[7]

Despite the County's asserted position, the County's own representatives appear to understand the concept that the County cannot recover damages for an entire system where only a small portion was damaged. In fact, the Deputy Director of Aviation at the time of the accident testified: "In my own opinion, there would be no reason why anyone would expect you [JCI] to replace an entire train system for $60 million, asking for a figure of $60 million, when, in fact,

---

[6] *Accord Allied Van Lines, Inc. v. McKnab*, 331 So. 2d 319, 319-20 (Fla. 2nd Dist. Ct. App. 1976); *Allstates Van Lines Corp. v. Lebenstein*, 303 So. 2d 33, 33 (Fla. 3d Dist. Ct. App. 1974); *McDonald Air Conditioning, Inc. v. John Brown, Inc.*, 285 So. 2d 697, 698 (Fla. 4th Dist. Ct. App. 1973).

[7] The County adheres to a legally unsupported position by claiming damages based on the costs not actually incurred but presumably to be incurred in obtaining a brand new state-of-the-art APM system. This includes damages for the north train and other independent parts of the system that were undeniably not damaged and continued to provide service for years after the accident (including at the present time). The County is not entitled to damages measured by such replacement costs as a matter of law. *See Grossman Holdings Ltd. v. Hourihan*, 414 So. 2d 1037, 1039 (Fla. 1982) (courts may not impose damages that are disproportionate to the injury suffered by plaintiff or constitute "economic waste"); *Heine v. Parent Constr., Inc.*, 4 So. 3d 790, 792 (Fla. 4th Dist. Ct. App. 2009) ("betterment" is prohibited, even in those cases where damages are properly premised on the repair or replacement cost of the property).

you know, the responsibility would only be to make the County whole on the south train." (*See, e.g.*, 11/5/10 Hearing Testimony of Max Fajardo, attached as Ex. B to SOF, at 102:17-22.)

The time for disclosure of expert testimony of this nature has come and gone. Nevertheless, the County has failed to provide any evidence as to the valuation of the south train, in experts' reports or anywhere else. The only evidence adduced to date establishes that the aged and deteriorating APM System had already significantly exceeded its design life, was prone to frequent malfunctions, had been depreciated by the County to a value of zero, was initially intended to be scrapped by 2006, and was scheduled to be decommissioned and/or replaced no later than 2011. (*Id.* ¶¶ 9-11, 14-15, 19.) Without evidence from which a jury can reasonably discern the value of what the County lost, the County's claim cannot survive. *See Gulf Group Holdings, Inc. v. Coast Asset Mgmt. Corp.*, 516 F. Supp. 2d 1253 (S.D. Fla. 2007) (defendant "entitled to summary judgment because, without damages, [plaintiff] cannot maintain its claim for breach of contract"). *Accord* 1-34 Florida Forms of Jury Instruction § 34.06 (in order to recover damages for breach of contract, the Plaintiff must provide "some reasonable basis for estimating or approximating the amount of the loss or harm").

## CONCLUSION

The evidence is not in dispute. It is the County, not JCI, that breached the contract. For this reason and all the others set forth above, Johnson Controls, Inc. respectfully requests that this Court grant summary judgment against the County and in favor of JCI.

Dated: March 14, 2011

                        Respectfully submitted,

           By: /s/ Michael J. Drahos
                Christopher E. Knight, Esq.
                Fla. Bar No. 607363
                Michael J. Drahos, Esq.
                Fla. Bar No. 0617059
                FOWLER WHITE BURNETT, P.A.
                Espirito Santo Plaza, 14th Floor
                1395 Brickell Avenue
                Miami, Florida 33131-3302
                Telephone: (305) 789-9200
                Facsimile: (305) 789-9201
                cknight@fowler-white.com
                mdrahos@fowler-white.com

Robert A. Roth
Jennifer L. Ilkka
REED SMITH LLP
10 S. Wacker Drive
Chicago, Illinois  60606-7507
312-207-1000
raroth@reedsmith.com
jilkka@reedsmith.com
*Counsel for Defendant Johnson Controls, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2011, I electronically filed **Johnson Controls'**

**Memorandum of Law in Support of its Motion for Summary Judgment** with the Clerk of

Court using the CM/ECF system which will send notification of such filings(s) to the following:

Deborah Bovarnick Mastin, Esq.
Cynji Lee, Esq.
Office of the County Attorney
Miami Dade County
P.O. Box 025504
Miami, Florida 33102-5504
dmastin@miami-airport.com
clee@miami-airport.com


_____ /s/ Michael J. Drahos _____